**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALLEN GARRARD, *individually and on behalf of all others similarly situated,* | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| RUST-OLEUM CORPORATION, | |
| Serve at: 11 Hawthorn Parkway Vernon Hills, IL 60061 | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff brings the following Complaint against Rust-Oleum Corporation ("Rust-Oleum") related to the company's marketing and sale of Rust-Oleum Restore products, specifically Rust-Oleum Deck Start Wood Primer, Restore 2X One Coat Solid Stain, and Restore 4X Deck Coat (collectively "Restore Products"). In support of his Complaint, Plaintiff respectfully submits the following:

**NATURE OF THE CASE**

1.      Plaintiff brings this proposed class action on behalf of himself and all other consumers who purchased Restore Products.

2.      Rust-Oleum sold Restore Products to consumers for the purpose of resurfacing wooden structures, but the company misrepresented, omitted, and concealed material information concerning the efficacy of Restore Products, including (1) Restore Products are more prone to chipping, peeling, and flaking than comparable wood resurfacing products; (2) Restore Products

1

do not last longer than comparable products and, instead, they deteriorate more quickly than comparable products; and (3) Restore Products do not provide enhanced protection that is superior to comparable products despite a premium price charged for Restore Products.

3.      Rust-Oleum sold Restore Products with full knowledge of these conditions, yet did not disclose them to consumers. In this respect, Rust-Oleum has concealed and omitted material facts in violation of the law.

4.      Rust-Oleum's conduct harmed consumers. Rust-Oleum charges a premium for its products, and consumers pay enhanced prices for Restore Products. Moreover, consumers have not received the benefit of their bargain in that they have not received the product they purchased.

## PARTIES

5.      Allen Garrard is a citizen and resident of Cass County, Missouri.

6.      Rust-Oleum Corporation is an Illinois corporation with its principal place of business in Vernon Hills, Illinois. Rust-Oleum Corporation is owned by RPM International, Inc.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed classes, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, and this is a class action in which Rust-Oleum and class members are citizens of different states.

8.      This Court may exercise jurisdiction over Rust-Oleum because the company is an Illinois corporation with its principal place of business in this District. Furthermore, the company is registered to conduct business in Illinois, and intentionally avails itself of the markets within Illinois through the promotion, sale, marketing, and distribution of Restore Products, thus rendering the exercise of jurisdiction by this Court proper and necessary.

## FACTUAL ALLEGATIONS

### *Plaintiff's Purchase and Experience with Restore Products*

9.      In June 2017, Plaintiff purchased his Restore Products at the Sutherland's store located in Cass County, Missouri.

10.      Plaintiff purchased several Restore Products, including Restore Deck Start Wood Primer, Restore 2X, and Restore 4X.

11.      Plaintiff purchased four gallons of Restore Deck Start Wood Primer; Plaintiff paid $37.89 for each gallon.

12.      Plaintiff purchased four gallons of Restore 2X; Plaintiff paid $33.97 for each gallon.

13.      Plaintiff purchased three one-gallon containers of Restore 4X; Plaintiff paid $34.25 for each gallon.

14.      Plaintiff also purchased one five-gallon container of Restore 4X; Plaintiff paid $137 for the container.

15.      In total, Plaintiff spent $527.19 on Restore Products.

16.      Plaintiff completed applying the Restore Products to his cedar wooden deck in September 2017.

17.      By May 2018, the Restore Products already were detaching from several spots on the deck. Plaintiff repaired those spots.

18.      By January 2019 – less than two years after application – the Restore Products were detaching, peeling, and flaking in several locations on the floor and railings of the deck.

19.      Below are a series of illustrative photographs of Plaintiff's deck; the pictures were taken in August 2019:

 



20.    Indeed, several of the photos reveal moisture, bubbling, and even plant-life growing from where Plaintiff applied Restore Products:

4





*Rust-Oleum's Marketing of Restore Products*

21.     According to Rust-Oleum's Technical Data, Restore 4X "is a high build, water based acrylic coating designed to resurface aged wood and concrete decks, patios, and walkways. The high build finish provide[] slip resistance and can bridge over or fill small cracks, checks, nail holes, or other minor surface defects."[1]

22.     Rust-Oleum markets its Restore 4X product as the "Ultimate Refinish" that is "4X thicker than ordinary paint" and a "premium ultra solid coating." According to Rust-Oleum, Restore 4X "[r]efinishes weathered surfaces" and "[c]onceals hairline cracks." Restore 4X purports to provide "[s]uperior coverage" and "long lasting protection."[2]

23.     Similarly, Rust-Oleum markets its Restore 2X as being "2X thicker than ordinary paint" that "requires only one coat for total coverage."[3]

24.     According to Rust-Oleum, Restore 2X provides "superior water repellency" with special "algae and mildew resistant coating."[4]

25.     Restore 2X also purportedly has "NeverWet Properties Inside" with "Hydrophobic Technology" that is designed to "extend[] the life of your deck."[5]

26.     Restore 2X also touts that it provides its protections in a "One Coat Application." The feature is prominently labeled on the Restore 2X label, and it's repeatedly asserted as part of Rust-Oleum's online "Restore 2X Tips & Techniques for Wood."

---

[1] https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx
[2] *See* https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-4x-deck-coat
[3] https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-2x
[4] *Id.*
[5] *Id.*

27.     Thus, according to Rust-Oleum, the company's Restore 2X property provides the enhanced protective coating of its "NeverWet" products, but also requires only one coat application—seemingly the best of both worlds.

28.     But Rust-Oleum "NeverWet" products require a two-coat application to be effective.[6] Thus, Restore 2X cannot—as its label prominently and explicitly asserts—contain "NeverWet Properties" because the application process is entirely different. Nonetheless, Rust-Oleum touts Restore 2X as having "NeverWet" properties.

29.     Plaintiff also purchased and applied Restore Deck Start Wood Primer. Restore Deck Start Wood Primer is a compatible product with Restore 4X and Restore 2X.

30.     The label of Deck Start Wood Primer states that it "simplifies prep & promotes topcoat adhesion;" Rust-Oleum's marketing materials make the same assertion.[7]

31.     According to Rust-Oleum, the Deck Start Wood Primer does not require "sanding or stripping" and it "works with any solid topcoat."[8]

32.     Rust-Oleum also asserts that Deck Start Wood Primer "works on weathered and worn wood."[9]

33.     As outlined above, Rust-Oleum's representations are false because Restore Products:

a.     Separate, crack, peel, bubble, flake, pucker, chip and otherwise prematurely fail shortly after application;

b.     Are not superior to ordinary deck paint or stain;

---

[6] https://www.rustoleum.com/digitalencyclopedia/product-catalog/rustoleumusa/consumer-brands/neverwet/neverwet-kit/. ("Rust-Oleum NeverWet is a two-step product system designed to create a moisture repelling barrier on a variety of surfaces. It is suitable for use on metal, wood, … and more.")
[7] https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-deck-start-wood-primer
[8] *Id.*
[9] *Id.*

c.      Cannot withstand harsh weather;

d.      Do not provide "superior water repellency"; and

e.      Do not contain special "algae and mildew resistant coating."

34.     Regarding Restore 2X with its "NeverWet Properties," Rust-Oleum's representations are false because "NeverWet" products require a two-coat application, but Restore 2X touts its efficacy with a "One Coat Application." Thus, Rust-Oleum suggests to consumers, particularly through its prominent display of "NeverWet Properties" on the label that Restore 2X will have the same efficacy as its "NeverWet" products, despite the inconsistent application processes.

35.     Rust-Oleum knew or should have known about these conditions related to Restore Products and omitted the information and/or concealed it from consumers.

### Rust-Oleum's Knowledge

36.     Rust-Oleum knew or should have known about the defects in its Restore Products. Indeed, Rust-Oleum previously defended litigation concerning several offerings within its Restore family of products.

37.     In *In re: Rust-Oleum Restore Marketing Sales Practices and Products Liability Litigation*, the company faced accusations similar to those here: that the company's marketing of its Restore products misrepresented the efficacy of the products, and omitted and concealed material facts related to their functionality.[10]

38.     Although technically the MDL encompassed different Restore products than those at issue here, the claims in that case also concerned the products' adhesive qualities and durability, superiority to other products, and ability to withstand flaking, bubbling, and peeling.

---

[10] The case was multi-district litigation in the U.S. District Court for the Northern District of Illinois (MDL No. 2602). Rust-Oleum settled the claims in its Restore MDL in 2016.

8

39.     Thus, the earlier litigation put Rust-Oleum on notice about the quality of its Restore products, and the company knew or should have known about the defects in its other Restore products, including those at issue here.

40.     Moreover, regarding Restore 2X and its "NeverWet Properties," Rust-Oleum knew that "NeverWet" products required a two-coat application process and nonetheless falsely advertised Restore 2X as: (a) containing "NeverWet Properties," and (b) being effective with one coat of application. According to Rust-Oleum's own literature, these two assertions are inconsistent and Rust-Oleum knew or should have known that its label was false.

***Consumer Complaints About Rust-Oleum's Products***

41.     Customer complaints about Rust-Oleum's products are rampant, demonstrating that Plaintiff's experience with Rust-Oleum's products is not unique.

42.     In late September 2019, one customer wrote: "I bought the Restore 4x and applied it in October 2016 (I live in Florida). Fast forward 2 years and my deck has started to peel and crack. Horrible product. Pressure washed the deck a month ago and 1/3 of the paint just blew off. Ugghhhhhh. I won't be buying this product again…"[11]

43.     Another customer wrote:

> Rust-oleum Restore DO NOT USE THIS PRODUCT IT IS TERRIBLE! Unfortunately I didn't take heed of all the negative reviews on the failure of this product. early summer of 2018 I prepped my deck as the instructions said and applied it to the deck. Looked great all summer but early spring 2019 I could see how the finish starting to flake off from spots all over. It was not in any particular place and not in well used spots. The pictures I have added to this post were taken today 09/08/19. There are areas all over the deck that have flaked off. I have no idea what I'm going to do it looks awful. I understand there is a class action suit against Rust-oleum for the failure of this product and

---

[11] https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/#more-7196 (Casie P.).

9

wish I could get some kind of resolve from the company to fix this mess.[12]

44.     Another customer wrote in September 2019: "This stuff has ruined our deck! Now to try to remove it after we spent all that $$! Ugh!"[13]

45.     Another customer wrote in September 2019: "Wow, We have same problem, put on 3 years ago . Started peeling & cracking last year was going to touch it up but couldn't get that same stuff at home depot. So here we are slowly getting it up trying this & trying that only to find many rotten pressure treated 5/4 deck boards, what a mess! Thanks rustoleum restore[.]"[14]

46.     These are just a sample of the over 1,600 comments from consumers, the vast majority of whom are disappointed with the performance and efficacy of Rust-Oleum's Restore line of products.[15]

47.     Given its previous litigation and the hundreds of consumer complaints, Rust-Oleum knew or should have known that its Restore Products were faulty. Rust-Oleum nonetheless sold Restore Products to Plaintiff and consumers throughout the United States. Rust-Oleum's marketing materials misrepresented the qualities of the Restore Products, and the company omitted or concealed its knowledge about the products' defective qualities.

48.     Had Plaintiff and consumers been aware of the defective nature of Restore Products, they would not have purchased Restore Products or would have paid far less money for them.

49.     In this respect, Plaintiff and consumers have been damaged because either (1) they paid for products with no value, or (2) they paid substantially more than the value of the product

---

[12] *Id.* (Robert F.).
[13] *Id.* (Stacy B.).
[14] *Id.* (John E.).
[15] *Id.*

they received (i.e., they did not realize the benefit of their bargain). Under either determination, Plaintiff and consumers have been harmed by Rust-Oleum's conduct.

## CLASS ACTION ALLEGATIONS

50.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to represent the following proposed Nationwide Class:

> **All persons who purchased Restore Products in the United States between October 17, 2014 to the present ("Nationwide Class").**

51.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to represent the following proposed Missouri Class:

> **All persons who purchased Restore Products in Missouri between October 17, 2014 to the present ("Missouri Class").**

52.     Excluded from the proposed classes are Rust-Oleum; any affiliate, parent, or subsidiary of Rust-Oleum; any entity in which Rust-Oleum has a controlling interest; any officer, director, or employee of Rust-Oleum; any successor or assign of Rust-Oleum; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; members of the judge's staff; and anyone who purchased Restore Products for the purpose of resale.

53.     **Numerosity**. Rust-Oleum sells Restore Products in United States through major retailers. Members of the proposed classes likely number in the hundreds or thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

54. **Predominance**. Common questions of law and fact exist as to all members of the proposed classes and predominate over questions affecting only individual class members. These common questions include whether:

a. Restore Products are defective;

b. Rust-Oleum knew or should have known about the defects in Restore Products and, if so, when Rust-Oleum discovered them;

c. Rust-Oleum disclosed the existence of the defects to potential customers;

d. Rust-Oleum concealed the existence of the defect from potential customers;

e. Rust-Oleum misrepresented the efficacy and true nature of Restore Products;

f. Rust-Oleum's conduct harmed Plaintiff and the classes;

g. Plaintiff and the classes are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or permanent injunction; and

h. Plaintiff and the classes are entitled to damages.

55. **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the proposed classes purchased Restore Products that contain the same defects, giving rise to substantially the same claims.

56. **Adequacy**. Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously by monitoring and directing the actions of class counsel. The interests of members of the classes will be fairly and adequately protected by Plaintiff and her counsel.

12

57.     **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Rust-Oleum economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from Rust-Oleum's Restore Products, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

58.     In the alternative, the proposed classes may be certified because:

a.      the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Rust-Oleum;

b.      the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.      Rust-Oleum has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

13

**FIRST CAUSE OF ACTION**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201,** *et seq.*
**(Plaintiff individually and on behalf of the Nationwide Class)**

59.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

60.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

61.     There is an actual controversy between Rust-Oleum and Plaintiff concerning:

a.     Whether Restore Products are defective thus causing them to fail;

b.     Whether Rust-Oleum knew or should have known of the defects;

c.     Whether Rust-Oleum misrepresented the nature and quality of Restore Products; and

d.     Whether Rust-Oleum concealed and/or omitted the defective qualities associated with Restore Products.

62.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63.     Plaintiff seeks a declaration that Restore Products are defective as set forth herein. The defective nature of Restore Products is material and requires disclosure to all consumers who purchased them.

64.     The declaratory relief requested herein will generate common answers that will settle the parties' controversy. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

**SECOND CAUSE OF ACTION**
**Violation of the Missouri Merchandising Practice Act ("MMPA")**
**(Plaintiff individually and on behalf of the Missouri Class)**

65.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

66.     The Missouri Merchandising Practices Act ("the MMPA") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice."  Mo. Rev. Stat. § 407.020.1.

67.     The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

68.     Under the MMPA, the term "merchandise" is broadly defined to include "any objects . . . or services."   Mo. Rev. Stat. § 407.020.4. Rust-Oleum's Restore Products are "merchandise" within the scope of the MMPA.

69.     The MMPA authorizes private causes of action, and class actions.  Mo. Rev. Stat. §§ 407.025.1; 407.025.2. Plaintiff and members of the proposed class are individuals entitled to bring suit and recover under the MMPA.

70.     Plaintiff purchased his Restore Products for personal use at his residence.

71.     When Rust-Oleum designed, developed, manufactured, marketed, and sold Restore Products, it was involved in the conduct of trade and commerce under the MMPA.

72.     At the time Rust-Oleum developed, manufactured, marketed, and sold Restore Products, it knew or should have known that they were defective.

73. Nonetheless, Rust-Oleum concealed its knowledge of the defects from consumers like Plaintiff and class members, and instead sold Restore Products as ordinary for normal use.

74. Furthermore, Rust-Oleum misrepresented the characteristics of Restore Products.

75. Rust-Oleum's misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the MMPA.

76. As a direct and proximate result of Rust-Oleum's unfair acts or practices alleged herein, Plaintiff and the class members were damaged.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff individually and on behalf of the Nationwide Class)**

77. Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

78. As a result of its wrongful and fraudulent acts and omissions, as set forth above, Rust-Oleum obtained monies that rightfully belong to Plaintiff and the class members to the detriment of the Plaintiff and the class members.

79. Rust-Oleum appreciated, accepted and retained the non-gratuitous benefits (i.e. profits) conferred by Plaintiff and the class members who had no knowledge of the defective characteristics of Restore Products.

80. Plaintiff and the class members either (1) paid a higher price for Restore products which actually had lower value or no value at all, or (2) paid Rust-Oleum monies for Restore Products that Plaintiff and the class members would not have purchased had they been aware of the defective characteristics of Restore Products.

81. It would be inequitable and unjust for Rust-Oleum to retain these wrongfully obtained profits.

82.    Rust-Oleum's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

83.    Plaintiff and the class are entitled to restitution of the profits unjustly obtained, plus interest.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Plaintiff individually and on behalf of the Nationwide Class)

84.    Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

85.    810 Ill. Com. Stat. § 5/2-314, which codifies section 2-314 of the Uniform Commercial Code ("UCC"), imposes an implied warranty of merchantability on the sale of goods by a merchant.

86.    Under  law, a plaintiff may recover under the provisions of section 5/2-314 by proving:

      a.    that a merchant sold goods of that kind;

      b.    the goods were not fit for the ordinary purposes for which such goods are used;

      c.    injury and damages to the plaintiff or his property; and

      d.    proximately resulting from any breach of warranty.

*Federal Ins. Co. v. Village of Westmont*, 649 N.E.2d 986, 989-90 (Ill. App. Ct. 1995).

87.    Under 810 Ill. Com. Stat. § 5/2-104, Rust-Oleum is a merchant because it is "a person who deals in goods of the kind."

88.    Under 810 Ill. Com. Stat. § 5/2-105, which codifies UCC section 2-105, Restore Products are a good, and Rust-Oleum's sale of Restore Products to Plaintiff was the sale of goods by a merchant.

89.     Under 810 Ill. Com. Stat. §5/2-314(2), to be "merchantable" goods must be "fit for the ordinary purposes for which such goods are used."

90.     Because Restore Products are defective, they are unfit for its ordinary purposes.

91.     As a factual and proximate result of the defective nature of Restore Products, Plaintiff suffered injury and damages.

92.     Defendant has not disclaimed the implied warranty of merchantability.

93.     Plaintiffs and each of the Nationwide Class members have had sufficient direct dealings with either Rust-Oleum or its agents to establish privity of contract between Rust-Oleum and Plaintiff and each of the Nationwide Class members. Nonetheless, privity is not required here because Plaintiff and each of the Nationwide Class members are intended third-party beneficiaries of contracts between Rust-Oleum and its dealers.

94.     Accordingly, Plaintiff is entitled to recover for Rust-Oleum's violation of 810 Ill. Com. Stat. 5/2-314.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Plaintiff individually and on behalf of the Nationwide Class)**

95.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

96.     Rust-Oleum manufactured, marketed, advertised, sold, and warrant Restore Products as a deck resurfacer.

97.     As set forth herein, Rust-Oleum made numerous material misrepresentations regarding its Restore Products.

98. As set forth herein, the representations are false and misleading. In addition, Rust-Oleum failed to disclose that Restore Products do not work as marketed and degrade after application, and omitted other material facts as set forth herein.

99. At the time of sale, Rust-Oleum knew or should have known about the Restore Products' propensity to prematurely fail, by and through, *inter alia*, internal audits, field testing, online complaints, internal warranty and complaint data, and/or the previous litigation related to its other Restore products.

100. In this respect, Rust-Oleum negligently made misrepresentations to Plaintiff and the members of the proposed class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed classes and appointing Plaintiff and his counsel to represent the classes;

b. An order awarding Plaintiff and the class members their actual damages, and/or any other form of monetary relief provided by and pursuant law;

c. An order awarding Plaintiff and the classes restitution, disgorgement or other equitable relief as the Court deems proper;

d. An order awarding Plaintiff and the classes pre-judgment and post-judgment interest as allowed under the law; and

e. An order awarding Plaintiff and the classes reasonable attorney fees and costs of suit, including expert witness fees.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:   January 27, 2020                    Respectfully submitted,

*/s/ Trent B. Miracle*
Trent B. Miracle (IL 6281491)
Eric Johnson (ILND GB8902)
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax:     (618) 259-2251
tmiracle@simmonsfirm.com
ejohnson@simmonsfirm.com

Mitchell M. Breit (*pro hac vice*)
Jay Barnes (*pro hac vice*)
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, NY 10016
Phone: (212) 784-6400
Fax:     (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

Matthew L. Dameron (*pro hac vice*)
Amy R. Jackson (*pro hac vice*)
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Phone: (816) 945-7135
Fax:     (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

***Counsel for Plaintiff and the Proposed Classes***