# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLEN GARRARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>Defendant. | Case No. 20-cv-00612<br><br>Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Plaintiff Allen Garrard filed suit against defendant Rust-Oleum Corporation on behalf of himself and a putative class alleging that Rust-Oleum's wood finishing products are defective and Rust-Oleum made numerous misrepresentations about the products' quality and effectiveness. Rust-Oleum moved to dismiss the complaint and strike many of the complaint's class action allegations. [25]. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Rust-Oleum manufactures and sells wood finishes and related products, including Deck Start Wood Primer, Restore 2X One Coat Solid Stain, and Restore 4X Deck Coat (collectively, "the Restore Products" or "Products"). [1] at 1.[1] Rust-Oleum has its principal place of business in Vernon Hills, Illinois. *Id.* ¶ 6. According to Rust-Oleum's marketing, Deck Start Wood Primer "simplifies prep & promotes topcoat adhesion" without requiring "sanding or stripping." *Id.* ¶¶ 30–31. Restore 4X Deck Coat "[r]efinishes weathered surfaces," "[c]onceals hairline cracks," and provides "[s]uperior coverage" and "long lasting protection." *Id.* ¶ 22 (alterations in original). Rust-Oleum promotes Restore 2X Coat Solid Stain as

---

[1] Bracketed numbers refer to docket entries and are followed by page and/or paragraph number citations. Page numbers refer to the CM/ECF page number.

"provid[ing] 'superior water repellency' with special 'algae and mildew resistant coating.'" *Id.* ¶ 24.

Garrard lives in Cass County, Missouri. *Id.* ¶ 5. In June 2017, Garrard purchased the Restore Products from a local store in Cass County. *Id.* ¶¶ 9–14. Garrard finished applying the Products to his "cedar wooden deck" in September 2017. *Id.* ¶ 16. "By May 2018, the Restore Products already were detaching from several spots on the deck." *Id.* ¶ 17. And, by January 2019, the Products "were detaching, peeling, and flaking in several locations on the floor and railings of the deck." *Id.* ¶ 18. Further, there was "moisture, bubbling, and even plant-life growing from where [Garrard] applied Restore Products." *Id.* ¶ 20.

Garrard filed this lawsuit alleging that Rust-Oleum's representations about the Restore Products are "false," the Products are defective, and Rust-Oleum "knew or should have known about the defects." *Id.* ¶¶ 33, 36. The complaint includes claims for a declaratory judgment, violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020.1, unjust enrichment, and breach of the implied warranty of merchantability under 810 ILCS § 5/2-314.[2] Garrard seeks to represent multiple consumer classes from states across the country. *Id.* ¶¶ 50–58.

Rust-Oleum moved to dismiss the complaint and strike certain class allegations. [25].

## LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiff['s] favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal pleading standards do "not require detailed factual allegations, but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (second alteration in original, internal quotation marks omitted).

---

[2] The complaint also includes a claim for negligent misrepresentation. [1] ¶¶ 95–100. Garrard voluntarily dismissed this claim in response to Rust-Oleum's motion to dismiss. [29] at 27 n.8. Accordingly, the court does not address this claim because it is no longer at issue.

2

Rule 9(b) imposes a heightened pleading standard for claims "alleging fraud or mistake." For such claims, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) requires a plaintiff to provide precision and some measure of substantiation to each fraud allegation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (internal quotation marks omitted). "Put more simply, a plaintiff must plead the who, what, when, where, and how of the alleged fraud." *Id.* (internal quotation marks omitted).

Federal Rule of Civil Procedure 23(d)(1)(D) "provides the Court with the ability to require the pleadings to be amended to remove class action allegations." *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *10 (N.D. Ill. Mar. 15, 2016). "Motions to strike class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective." *Id.* "But if the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature." *Id.*

## DISCUSSION

### I. Missouri Merchandising Practices Act

Garrard alleges that Rust-Oleum violated the Missouri Merchandising Practice Act ("MMPA"). Under the MMPA, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" is unlawful. Mo. Rev. Stat. § 407.020.1. Garrard alleges that Rust-Oleum violated the MMPA in two ways: first, by knowingly selling defective Products and failing to inform Garrard and other purchasers of the defects and, second, by "misrepresent[ing] the characteristics of Restore Products." [1] ¶¶ 73–75.

Rust-Oleum argues that Garrard's MMPA claim should be dismissed because (1) the complaint does not allege that any misrepresentations actually caused harm to Garrard; (2) many of Rust-Oleum's statements regarding the Products are not alleged to be false; (3) the alleged misrepresentations are inactionable puffery; and (4) to the extent Garrard's claim is based on Rust-Oleum's alleged omissions, the complaint does not adequately allege scienter.

"To state a private cause of action under the MMPA a plaintiff must show that (1) he purchased merchandise; (2) he purchased the merchandise for personal, family, or household use; (3) he suffered an ascertainable loss; and (4) the ascertainable loss was caused by a violation of the MMPA." *Craggs v. Fast Lane*

3

*Car Wash & Lube, LLC*, 402 F. Supp. 3d 605, 610 (W.D. Mo. 2019). Numerous courts have held that Rule 9(b) applies to MMPA claims, particularly those like Garrard's that are based on alleged misrepresentations and omissions. *Id.* at 611 (collecting cases).

Regarding the theory of liability that Rust-Oleum misrepresented the characteristics of the Products, the complaint fails to allege causation. "[T]he plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008); *see Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015) (affirming grant of summary judgment to defendant because the "alleged violations did not cause the [plaintiffs'] loss"). The complaint contains no factual allegations establishing how Rust-Oleum's alleged misrepresentations caused Garrard harm. In fact, the complaint does not allege Garrard was even aware of any alleged misrepresentation before purchasing or using the Products. The complaint therefore does not adequately allege causation for liability based on the alleged misrepresentations. *Cf. Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018) (affirming grant of summary judgment to defendant where there was "no evidence" the plaintiff "was aware of the misrepresentation"); *George v. Omega Flex, Inc.*, No. 17-cv-3114, 2020 WL 4718386, at *6–9 (W.D. Mo. Aug. 13, 2020) (granting summary judgment for failure to allege causation).

Garrard's only response on this issue is that Rust-Oleum is improperly trying to incorporate common law fraud elements into the MMPA, which expressly disclaims reliance and knowledge as elements. 15 Mo. C.S.R. §§ 60-8.020(2), 60-9.020(2). But "[w]hile actual reliance on the defendant's misrepresentation by the buyer is not required, . . . evidence of some factual connection between the misrepresentation and the purchase is required." *Faltermeier*, 899 F.3d at 622; *Bratton v. Hershey Co.*, No. 16-cv-4322, 2018 WL 934899, at *3 (W.D. Mo. Feb. 16, 2018) (similar). So although Garrard is correct that MMPA claims do not have the same elements as common law fraud, Garrard is still required to plead causation.

The complaint does, however, adequately allege causation for the theory of liability based on Rust-Oleum's omission of information about alleged defects in the Restore Products. Specifically, the complaint alleges that, "[h]ad Plaintiff and consumers been aware of the defective nature of Restore Products, they would not have purchased Restore Products or would have paid far less money for them." [1] ¶ 48. Thus, taking all reasonable inferences in favor of Garrard, the complaint adequately alleges causation based on Rust-Oleum's alleged omission of information about the Products' defects, as the omissions allegedly resulted in Garrard buying

4

the Products when he would not have done so if he had complete, accurate information (or, at the very least, he would have paid less than he did).

But the complaint still does not state a claim for violation of the MMPA based on Rust-Oleum's alleged omissions because it does not adequately plead Rust-Oleum's scienter. The MMPA generally does not impose a scienter requirement, but an omission-based claim requires the plaintiff to establish that the defendant failed "to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 Mo. C.S.R. § 60-9.110(3); *Dean v. Am. Honda Motor Co.*, No. 17-03069-CV-S, 2018 WL 1249905, at *2 (W.D. Mo. Mar. 9, 2018). "Under this standard, Plaintiff is required to show Defendant was aware of the alleged defect in the [product at issue]; when Defendant became aware; and that Defendant purposefully omitted this fact in its representations to the class members." *Johnsen v. Honeywell Int'l*, No. 14CV594, 2016 WL 1242545, at *3 (E.D. Mo. Mar. 29, 2016); *Budach v. NIBCO, Inc.*, No. 14-cv-04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015).

Garrard's complaint does not allege that Rust-Oleum knew, or upon reasonable inquiry could have known, of the alleged defects in the Products. The complaint alleges two potential bases for Rust-Oleum's knowledge: (1) the *In re Rust-Oleum Restore Marketing, Sales Practices & Products Liability Litigation*, No. 15 C 1364 ("*Rust-Oleum MDL*"); and (2) consumer complaints. [1] ¶¶ 37–47. The complaint does not provide sufficient factual allegations for either to be a basis for Rust-Oleum's knowledge. First, as a general matter, the complaint contains no allegations about whether Rust-Oleum could have discovered the alleged defects in the Products upon a reasonable inquiry. Second, Garrard admits that the *Rust-Oleum MDL* "encompassed different Restore products than those at issue here." *Id.* ¶ 38. Even if the products at issue in the *Rust-Oleum MDL* suffered from similar problems as the Products at issue here as the complaint alleges, *id.* ¶ 38, the complaint does not include any allegations from which it could be reasonably inferred that the litigation should have, or actually did, put Rust-Oleum on notice that the Restore Products were defective. For example, the complaint does not allege that the products in the *Rust-Oleum MDL* had similar compositions to the Restore Products, such that Rust-Oleum would know that the problems in the *Rust-Oleum MDL* products also existed in the Restore Products. The complaint contains no allegations that the products at issue in the *Rust-Oleum MDL* were in any way comparable to the Products here.[3] *See Dean*, 2018 WL 1249905, at *2 (allegation

---

[3] Garrard submitted a "Technical Data" form for the Restore Deck & Concrete 10X product at issue in the *Rust-Oleum MDL* to show that Restore Deck & Concrete 10X is described similarly to some of the Restore Products at issue here. [29-1]. This document, however, was not attached to the complaint and the Restore Deck & Concrete 10X product (or its Technical Data form) was not central to the complaint. As a result, it cannot be appropriately considered when resolving the motion to dismiss. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) ("district court's reliance on matters outside the complaint

5

that "similar Honda HR-Vs manufactured, sold, marketed and/or designed by [AHM] have experienced similar material logistical issues" did not "provide enough facts to state a claim that AHM failed to disclose material facts that were known to it, or upon reasonable inquiry would [have been] known to it" (alterations in original)).

Second, the alleged consumer complaints do not show that Rust-Oleum knew about (or should have known about) any alleged defects in June 2017 when Garrard purchased the Products, [1] ¶ 9, because they all post-date Garrard's purchases. The consumer complaints cited in the complaint are from 2019, *id.* ¶¶ 42–45—two years after Garrard bought the Products. The complaint also makes the conclusory allegation that "Rust-Oleum knew or should have known about the defects in its Restore Products." *Id.* ¶ 36. Without factual allegations to support it, this allegation is insufficient. *Budach*, 2015 WL 3853298, at *8 (general allegation that defendant "knew or should have known of alleged defects in its products" was insufficient).

Because these problems regarding causation and knowledge are fatal to Garrard's MMPA claim, Rust-Oleum's remaining arguments (whether the alleged misrepresentations are inactionable puffery and not alleged to be false) need not be addressed. Garrard's MMPA claim is dismissed without prejudice.

## II.     Breach Of Implied Warranty Of Merchantability

Garrard's fourth cause of action is for violation of 810 ILCS 5/2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Rust-Oleum moves to dismiss this claim on the basis that the statute does not apply extraterritorially and, even if it does, Garrard is not in privity with Rust-Oleum, has not given the required notice to Rust-Oleum, and does not adequately allege the Products' ordinary purpose.

"[T]he long-standing rule of construction in Illinois . . . holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (quoting *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350 (1946)); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 385 (7th Cir. 2003) ("not[ing] that the Illinois Supreme Court had stated it would not give extraterritorial effect to Illinois statutes unless the legislature expressly directed it to do so" (citing *Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*, 43 Ill.

---

in ruling on the motion to dismiss" without converting motion to dismiss to motion for summary judgment "was in error"). Even if considered, the mere fact that the products are similar in some way does not show that defects in Restore Deck & Concrete 10X should have alerted Rust-Oleum to defects in the Restore Products.

6

2d 1, 6–8 (1969)). Applying this rule, the Illinois Supreme Court has held that statutes like the Consumer Fraud Act, which prohibits "deceptive acts or practices . . . in the conduct of any trade or commerce," 815 ILCS 505/2, do not apply to out-of-state transactions. *Avery*, 216 Ill. 2d at 188–90 (because transactions, alleged deception, and resulting damages all "occurred outside Illinois," the "out-of-state plaintiffs . . . have no cognizable cause of action under the Consumer Fraud Act").

810 ILCS 5/2-314 does not apply extraterritorially. The statute contains no provisions that suggest the Illinois legislature intended for the statute to apply outside of Illinois and Garrard points to none. Garrard contends that no Illinois court has directly held that 810 ILCS 5/2-314 does not apply extraterritorially, but the rule against extraterritorial application of a statute absent express provisions indicating otherwise dictates that 810 ILCS 5/2-314 not be applied to acts outside of Illinois. *See Avery*, 216 Ill. 2d at 184–85; *Graham*, 43 Ill. 2d at 6.

Because 810 ILCS 5/2-314 does not apply outside of Illinois, Garrard has failed to state a claim for its violation. Garrard is a resident of Missouri, he purchased the Products in Missouri, and his alleged damages (any overpayment and damage to his deck) occurred in Missouri. [1] ¶¶ 5, 9, 16–20. The claim's only connection to Illinois is that Rust-Oleum is based in Illinois. *Id.* ¶ 6. This is insufficient for the claim to be considered to have occurred in Illinois, and Garrard does not argue otherwise. *See Avery*, 216 Ill. 2d at 189–90 (Consumer Fraud Act did not apply to out-of-state transactions even though defendant was headquartered in Illinois). Garrard's breach of implied warranty claim is dismissed without prejudice.

### III. Unjust Enrichment

Garrard's third cause of action is for unjust enrichment. Garrard alleges that Rust-Oleum was unjustly enriched when Garrard purchased the Products because he "either (1) paid a higher price for Restore products which actually had lower value or no value at all, or (2) paid Rust-Oleum monies for Restore Products that [he] . . . would not have purchased had [he] been aware of the defective characteristics of Restore Products." [1] ¶ 80. Rust-Oleum argues that this claim should be dismissed because it is barred by the economic loss doctrine, which under Missouri law "prohibits a commercial buyer of goods from seeking to recover in tort for economic losses that are contractual in nature." *Dunne v. Res. Converting LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (internal quotation marks omitted).

As a threshold matter, the parties dispute whether Missouri or Illinois law applies to Garrard's claim. Rust-Oleum asserts that, under Illinois choice of law rules, Missouri law applies because Missouri has the most significant relationship with the claim. Garrard counters that the court should apply Illinois law because the forum state's law presumptively applies absent an outcome determinative

7

conflict between different states' laws, and Rust-Oleum has not established such a conflict between Illinois and Missouri law here.

The court declines to decide whether Missouri or Illinois law applies to Garrard's unjust enrichment claim because Rust-Oleum has not shown an outcome determinative conflict between the two states on this issue. "A district court is required to engage in a choice of law analysis only if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (internal quotation marks omitted). The burden is on "the party seeking a choice of law determination, to establish the existence of an outcome-determinative conflict." *Id.* (internal quotation marks omitted). Here, Rust-Oleum has not identified any outcome-determinative differences between Missouri and Illinois law regarding Garrard's unjust enrichment claim. Rust-Oleum contends that "Missouri and Illinois differ regarding whether the benefit enjoyed by the defendant must be directly conferred by the plaintiff." [31] at 3. Rust-Oleum, however, does not seek dismissal of the claim based upon whether or not Garrard directly conferred a benefit on Rust-Oleum, so this conflict (assuming it exists) is not outcome determinative at this stage of the litigation. Because no outcome determinative conflicts have been established at this time, no choice of law analysis is necessary.

Under either Illinois or Missouri law, Rust-Oleum has not shown that the economic loss doctrine bars Garrard's unjust enrichment claim. Rust-Oleum does not argue that Illinois law would bar Garrard's claim under the economic loss doctrine, and the court's own research has not identified any cases reaching such a result. Even under Missouri law, Rust-Oleum has not shown that the economic loss doctrine applies. Rust-Oleum cites *Dunne v. Resource Converting, LLC*, No. 16 CV 1351, 2019 WL 1262185, at *5-6 (E.D. Mo. Mar. 19, 2019), and *Flynn v. CTB, Inc.*, No. 12 CV 68, 2013 WL 28244 (E.D. Mo. Jan. 2, 2013)—relied upon in *Dunne*—but *Dunne* was reversed by the Eighth Circuit for misapplying Missouri law on the economic loss doctrine, because the doctrine only applies to "warranty and negligence or strict liability claims." *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (internal quotation marks omitted); *see also Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 774 (8th Cir. 2020) ("Missouri law . . . expressly limits this doctrine to warranty and negligence or strict liability claims."). Rust-Oleum's motion to dismiss is therefore denied with respect to Garrard's unjust enrichment claim.

### IV.   Declaratory Judgment

Rust-Oleum next argues that Garrard's first cause of action for a declaratory judgment should be dismissed. Garrard is seeking a declaration that the Products "are defective" in a "material" way that "requires disclosure to all consumers who purchased them." [1] ¶ 63. Rust-Oleum contends that this claim should be

dismissed for multiple reasons, including because the Declaratory Judgment Act, 28 U.S.C. § 2201, creates only a remedy and not an independent cause of action.

Rust-Oleum is correct that Garrard's independent claim for a declaratory judgment claim is improper. The Declaratory Judgment Act "does not . . . provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (Fifth Cir. 2001) (en banc) ("[A]lthough the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."). Accordingly, Garrard's claim for a declaratory judgment is not a cognizable independent cause of action and is dismissed without prejudice. *See Sieving v. Cont'l Cas. Co.*, No. 20-cv-5127, 2021 WL 1614516, at *7–8 (N.D. Ill. Apr. 26, 2021) ("Count VI is properly dismissed because requests for declaratory judgment . . . are not independent causes of action." (internal quotation marks omitted)); *Keesler v. Electrolux Home Prods., Inc.*, No. 16 C 199, 2016 WL 3940114, at *3 (N.D. Ill. July 21, 2016) (striking count seeking declaratory relief because "the federal Declaratory Judgment Act provides only a form of relief, not an independent claim for relief" (citation omitted)).

Rust-Oleum, however, appears to also seek a determination that Garrard cannot obtain a declaration that the Restore Products are defective. The Seventh Circuit has previously affirmed district court decisions certifying classes under Federal Rule of Civil Procedure 23(b)(2) that sought class-wide declaratory relief, including declarations that the products at issue were defective. *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010). At this early stage in the proceeding, the court declines to prohibit Garrard from seeking declaratory relief—including on behalf of a putative class. Whether such declaratory relief is appropriate is more suitable for resolution at the class certification stage. Accordingly, although Garrard's first cause of action for a declaratory judgment is dismissed, Garrard may still seek declaratory relief and the merits of Garrard's (or the putative class's) entitlement to such relief can be resolved later.

### V. Class Allegations

Finally, Rust-Oleum requests that the court strike much of the complaint's class action allegations. Specifically, Rust-Oleum contends that the class definition is overly broad because some claims are time-barred, a class cannot be certified under Federal Rule of Civil Procedure 23 because individualized questions

predominate, and variations between states on the law governing unjust enrichment preclude certification.[4]

The court declines to address the merits of these arguments at this time, as they are more appropriately resolved on a fuller factual record at class certification. The class definition can ultimately be revised to avoid statute of limitations issues. *See Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 773 (N.D. Ill. 2018) (declining to strike class allegations based on statute of limitations because "any statute of limitations problem can be easily cured at the certification stage"). And whether individual issues will predominate over class-wide questions is inherently a fact-based determination ill-suited for resolution at the pleading stage. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) ("If . . . the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." (internal quotation marks omitted)). Similarly, multistate consumer class actions "are not categorically prohibited" despite variations in different states' laws, and whether they should be certified is better decided after development of the record. *Alea v. Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *7 (N.D. Ill. Nov. 7, 2017). Rust-Oleum is free to raise these arguments again at the appropriate time.

## CONCLUSION

Rust-Oleum's motion to dismiss is granted in part and denied in part. Garrard's MMPA, breach of implied warranty of merchantability, and declaratory judgment claims are dismissed without prejudice. Garrard is granted leave to file an amended complaint.

Date: December 14, 2021          /s/ Martha M. Pacold

---

[4] Rust-Oleum raises other arguments regarding whether the court has jurisdiction over the Missouri subclass asserting MMPA claims and whether class certification is appropriate for breach of implied warranty claims given differences in state laws. The court declines to address these issues given that Garrard's MMPA and implied warranty claims have been dismissed.