IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN GARRARD, individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 00612 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| RUST-OLEUM CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

There is a well-worn simile to describe something that is rather tedious and boring – "like watching paint dry." Discovery is often like that – and worse. Indeed, we have it on the best of authority that "protracted discovery, [is] the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000)(Posner, J). So, imagine what discovery regarding paint drying must be like. That is along the lines of what we have here, and counsel in this case – about a dozen of them – have been arguing over it for about four months. To make things a bit more tedious, the disputes they have been incapable of resolving are, to varying degrees, over trivial, routine matters. Why counsel in this case seem to have decided to take a "no-prisoners" stance, *Harding v. Maximus Multimedia Int'l, LLC,* 2009 WL 4730631, at *1 (N.D. Fla. 2009), on these particular disputes is not clear. What is clear is that whatever the reason, it is not a justifiable or persuasive one. It should not be overlooked that counsels' months of haggling have whittled down their conflicts, and they have filed a "Joint Submission Regarding Discovery Disputes" [Dkt. #87] and "Joint Responses." [Dkt. #90]. But fairly assessed, they are, in substance, dueling motions to compel.

As was pointed out some months ago, *Garrard v. Rust-Oleum Corp.*, No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023), counsel on both sides are, in effect, gambling that the court will exercise its "extremely broad discretion" in discovery matters, *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *see also Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013), in their favor. And it is a gamble, as was pointed out to the parties and their counsel when they began their trench warfare months ago. *See Garrard, supra.* Presumably, all this has been taken into account, and what's left are a couple of what should have been, but unfortunately were not, uncomplicated discovery disputes. In any event, the issues the parties discuss in their filings [Dkt. #87, 90] are resolved as follows.

## I.

We begin with the defendant's claim, which involves the seemingly simple and uncomplicated matter of counting. [Dkt. #87]. Unfortunately, even this seemingly straightforward enterprise has caused conflict. The defendant wants the plaintiff to answer Interrogatory No. 11, which asks "[f]or each photograph Plaintiffs produced in this Action without metadata showing the date the photo was taken, . . . specify the date the photo was taken as accurately as possible." It seems obvious that an undated photograph of something filed by a party in a federal lawsuit is not going to have evidentiary value standing alone. Yet, plaintiffs refuse to provide dates relating to the photograph on the ground that the defendant exceeded Fed.R.Civ.P. 33(a)(1)'s limit of "no more than 25 written interrogatories, including all discrete subparts." Plaintiffs say that there are 32 "discrete subparts" in Interrogatories Nos. 1-5, and 8, for a total of 36 interrogatories before Interrogatory No. 11. Defendant insists that there are no "discrete subparts," and Interrogatory No.

11 is just that: the eleventh interrogatory. Not surprisingly, the defendant is much more persnickety about "discrete subjects" when it is perusing the plaintiffs' interrogatories. *See, e.g.*, [Dkt. #90-3, Interrogatories Nos. 13, 18].

While counting supposedly "discrete subparts" might be significant to all too many counsel, *see, e.g., Am. Council of Blind of Metro. Chicago v. City of Chicago*, No. 19 C 6322, 2021 WL 5140475, at *1 (N.D. Ill. Nov. 4, 2021); *Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-01060, 2021 WL 4745376, at *7 n.8 (N.D. Ill. Oct. 12, 2021); *Coleman v. Illinois*, No. 19 C 3789, 2021 WL 4242465, at *3 (N.D. Ill. Apr. 30, 2021); *Vera Bradley Designs, Inc. v. Aixin Li*, No. 20 C 2550, 2021 WL 1088323, at *4 (N.D. Ill. Mar. 22, 2021); *New York Life Ins. Co. v. Peters*, No. 19 C 2269, 2021 WL 229659, at *3 (N.D. Ill. Jan. 22, 2021); *Schloss v. City of Chicago*, No. 18 C 1880, 2020 WL 12178208, at *2 (N.D. Ill. Oct. 2, 2020); *Hangzhou Aoshuang E-Complaint. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *2 (N.D. Ill. June 23, 2020), for courts it's often like – staying with the theme – "watching paint dry." That's because "[t]here is no bright-line test on how to count parts of interrogatories." *Jacks v. Directsat USA, LLC*, No. 10 C 1707, 2011 WL 382858, at *2 (N.D. Ill. Feb. 1, 2011). One person sees a single-themed interrogatory, while another sees five "discrete subparts." *See* Wright & Miller, Federal Practice and Procedure, § 2168.1("[A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," whereas "an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."). One can cite all the cases about counsel needing judges to count "discrete subparts" one wants, but in the end, it's just another *discretionary call*, reversible for abuse only. One judge might see eleven subparts; another might see thirty-two. Yet, as has been repeatedly explained in the context of discretionary

rulings, neither judge's assessment would necessarily be "wrong," and neither, therefore, would be reversible. *Garrard*, 2023 WL 1475164, at *2. As the court emphasized in *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011), "it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *Accord United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008)(". . . we found that one district judge did not abuse his discretion when he refused to grant a new trial based on the government's use of perjured testimony, even though we had found that a different district judge who was trying other defendants involved in the very same conspiracy also did not abuse his discretion when he did grant a new trial based on exactly the same perjured testimony.").

As it happens, in this case, both plaintiffs and defendant's lawyers have counted "wrong." I count two subparts to Interrogatory No. 1 (advertisement details and plaintiffs' reactions); three subparts to Interrogatory No. 2 (purchase details, reasons for purchase, alternatives); three subparts to Interrogatory No. 3 (construction, repairs, products); three subparts to Interrogatory No. 4 (preparation and application, replacement of boards); two subparts to Interrogatory No. 5 (issues and attempts to resolve them); two subparts to Interrogatory No. 8 (damages and proving damages). So, throwing in Interrogatories Nos. 6, 7, 9, and 10, that makes Interrogatory No. 11 the twentieth interrogatory. Another court might see it differently; but no matter. Twenty is less than twenty-five. Plaintiff is ordered to answer Interrogatory No. 11 within five days of the date of this Order.

**II.**

Plaintiffs' gripe is the murkier of the two. It has to do, perhaps not surprisingly, with the parties' agreed ESI discovery Order. The plaintiffs say they want the defendant to "disclose non-custodial and centralized sources of relevant ESI." [Dkt. #87, at 1]. The demand seems

uncontroversial. The parties' ESI Agreement says they "agree to meet and confer upon appropriate document sources (e.g., custodians, non-custodial and other centralized sources) . . . ." [Dkt. 75, at § III]. The problem is that the defendant's counsel say they *have* repeatedly met and conferred regarding non-custodial locations of documents. More specifically, defendant's counsel avers:

> On several of those conferences, I told Plaintiffs' counsel that Rust-Oleum had carefully identified non-custodial/centralized locations that were likely to contain documents relevant to these lawsuits. I specified that those included locations (if any) where the following categories of documents relating to the Products are stored: (I) research and development, (ii) testing, (iii) quality assurance, (iv) marketing, (v) labeling, (vi) consumer complaints, (vii) warranty claims, and (viii) sales.
>
> Rust-Oleum's identification of locations where discoverable documents are likely to be found, and collection of documents from those locations, has been exceptionally broad. Rust-Oleum has gathered and applied the parties' agreed ESI search terms to more than 900,000 documents from centralized sources.

[Dkt. #90-4](parenthesis in original).

So, from the court's perspective, the defendants have identified document harvesting locations by departments – research and development, testing, quality assurance, marketing, labeling, consumer complaints, warranty claims, and sales – and have claimed to have gathered and searched for a staggering number of documents. That – again, from the court's perspective – should have satisfied a plaintiff who that claims to want a list of non-custodial document sources. [Dkt #87, at 1-5]. It is unclear what more the plaintiff could want. A court cannot monitor Local Rule 37.2 conferences to see what's said and not said in the dozens of cases in which it is supervising discovery. Indeed, that inability has previously been explained in this very case. *Garrard*, 2023 WL 1475164, at *2.

We again point out what the Federal Rules of Civil Procedure expressly state and what scores of cases emphatically hold, namely that discovery is limited not only by relevance, but, in addition,

5

by whether a party's discovery demands are "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . ." Fed.R.Civ.P. 26(b)(1); *Garrard*, 2023 WL 1475164, at *2. No one, including the defendant, wants the wood on their deck rotting. And while a case presenting the issues that this one does is significant, especially to the parties, the reality is that this is not a wrongful death or wrongful conviction case, or a medical malpractice case in which the doctor's blunder has caused the death of a patient. Nor is it a case involving a claimed violation of the Constitution. This is a case about a product that purportedly did not work the way it was supposed to when it was purportedly used the way it was supposed to be used. The product isn't one that caused death or disfigurement or disability. What is involved is a $35 can of paint; or, in each case, several $35 cans of paint. [Dkt. #49, Pars. 14-18]. The fact that plaintiff's counsel wants to certify a large class of allegedly cheated paint buyers doesn't change what the case is actually about.

      With that in mind, we won't be having any mini-trials to test whether counsel are telling the truth about document locations throughout the discovery process, if that's what plaintiffs are angling for. If plaintiffs want more information on those document locations than defendant's attorneys swear they have already provided, the plaintiffs will have to issue appropriate interrogatories. As counting interrogatories has become so central in this case, parties should not be getting any uncounted inquiries. If the plaintiffs think there is something nefarious going on about the defendants' location claims and document searches, they will have make a proper showing for "discovery on discovery." *See, e.g., Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2021 WL 4306159, at *1 (N.D. Ill. Sept. 22, 2021)(discussing required showing and collecting cases); *Metcalf v. Ross*, No. 19 C 4623, 2021 WL 1577799, at *2 (N.D. Ill. Apr. 22, 2021)(same); *Steffan v. Cook Cnty. Sheriff*, No. 18 C 8202, 2020 WL 7353411, at *1 (N.D. Ill. Dec. 15, 2020).

### III.

There are eight more months of fact discovery remaining in this case, to be followed by five months of expert discovery after that. [Dkt. #86]. That's an exceedingly long time, especially if counsel in the case do not become more reasonable about where and when they draw the proverbial lines in the sand. But, we are cautiously optimistic that there will be few, if any, further glitches, and that Local Rule 37.2's admonition that counsel negotiate *in good faith* will be treated as more than an empty command and will govern counsels' future efforts in this case.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/23/23